IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Fowler, ) | C/A No. 0:13-1726-JFA-PJG |
|               Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | |
|               Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, James Fowler ("Fowler"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In September 2009, Fowler applied for DIB and SSI, alleging disability beginning October 1, 2004. Fowler's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 9, 2012, at which Fowler, who was represented by Michael E. Stegner, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on February 9, 2012 denying benefits and concluding that Fowler was not disabled. (Tr. 9-19.)

Fowler was born in 1953 and was fifty years old at the time of his alleged disability onset date. (Tr. 163.) He has a high school education and past relevant work experience as a carpenter, an air systems cleaner, and a polisher/grinder of equipment. (Tr. 188, 189.) Fowler alleged disability since October 1, 2004 due to shortness of breath and chest pains. (Tr. 183.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bilateral interstitial fibrosis with mild restriction; low back pain; left shoulder pain (20 CFR 404.1520(c) and 416.920(c)).
    * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
    * * *
5. . . . [T]he claimant has the residual functional capacity to perform work with restrictions that require no lifting or carrying over 50 pounds occasionally and 25 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional stooping and climbing; and an environment reasonably free from dust, fumes, gases, odors, and the extremes of temperature and humidity.
    * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
    * * *
7. The claimant was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant is presently 58 years of age, which is defined as an individual of advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a



finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-19.) The Appeals Council denied Fowler's request for review on April 24, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

PJG

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Fowler raises the following issues for this judicial review:

I.  The Commissioner erred at step five of the sequential evaluation process in both the application of the Medical Vocational Guidelines and in the use of the vocational testimony.

II. The ALJ did not explain his findings regarding Fowler's residual functional capacity, as required by Social Security Ruling 96-8p.

III. The ALJ failed to properly evaluate Fowler's credibility.

(Pl.'s Br., ECF No. 21.)

## DISCUSSION

**A.    Step Five**

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  To improve both the uniformity and efficiency of this determination, the Commissioner promulgated medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").  Heckler v. Campbell, 461 U.S. 458, 461 (1983).  The Grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). Id.



Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." Id.

When a claimant suffers solely from an exertional limitation and his or her situation falls precisely within one of the Grid categories, the Grid is conclusive. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). However, where a claimant suffers from both exertional and nonexertional limitations, the Grids may serve as guidelines, but are not determinative. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)); see also 20 C.F.R. §§ 404.1569a(d), 416.969a(d). Further, if the nonexertional limitation rises to the level that it affects the claimant's residual functional capacity to perform work even though he has the exertional capability to perform those jobs, then reliance on the Grids to determine whether the claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not the Grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983); see also Walker, 889 F.2d at 49.

In this case, as stated above, the ALJ determined that Fowler retained the RFC "to perform work with restrictions that require no lifting or carrying over 50 pounds occasionally and 25 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional stooping and climbing; and an environment reasonably free from dust, fumes, gases, odors, and the extremes of temperature and humidity." (Tr. 13.) The ALJ found that if Fowler retained the residual functional capacity to perform the full range of medium work, the Grids would direct a finding of "not disabled." (Tr. 18) (citing Rules 203.19 and 203.12). However, the ALJ observed that Fowler's

ability to perform the full range of medium work had been impeded by additional limitations and therefore asked the vocational expert whether jobs existed in the national economy that a hypothetical individual with Fowler's RFC could perform to determine the extent to which these limitations eroded the unskilled medium occupational base. In response to the ALJ's hypothetical question, the vocational expert stated that the hypothetical individual would be able to perform the occupations of packer (<u>Dictionary of Occupational Titles</u> ("DOT") # 920.587-018), with 1,400 jobs in South Carolina and 89,000 nationally; assembler (DOT # 733.685-014), with 2,200 jobs in South Carolina and 148,000 nationally; and machine tender (DOT # 641.685-077), with 1,600 jobs in South Carolina and 31,000 jobs nationally. (Tr. 82.) The vocational expert further stated that there was no conflict between the skill and exertional levels of these jobs and the DOT. Therefore, relying on this testimony, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and a finding of not disabled is appropriate. (Tr. 19.)

In challenging the ALJ's finding at Step Five, Fowler first argues that the ALJ erred in relying on two out of three jobs cited by the vocational expert. Fowler contends, and the Commissioner concedes, that the job of packer is actually light exertion rather than medium, and the Commissioner cannot rely on this job because the Grids direct a finding of disabled if Fowler is only capable of light work.[2] Fowler also argues that the job of machine tender involves exposure to heat

---

[2] Fowler also asserts that the vocational expert provided a nonexistent DOT number for this job and presumes the vocational expert meant DOT # 641.685-078 rather than 641.685-077. However, in light of the Commissioner's concession, the court need not reach this issue.



and environmental irritants, which are precluded by Fowler's RFC, and the vocational expert did not acknowledge or explain this contradiction as required by SSR 00-4p.

Fowler next argues that SSR 83-12 and 83-14 stand for the proposition that the Grids provide a framework for decisionmaking and that someone close to meeting a table rule warranting a finding of "disabled" should meet that rule even if there is a small fraction of work that can be performed at a higher level. In this case, Fowler argues that the additional nonexertional limitations eroded his ability to perform medium work such that the light work category or Rule 202.02 would be more appropriate, which directs a finding of "disabled." In support of this position Fowler argues that SSR 83-10 indicates that medium work "usually requires frequent bending-stooping" and SSR 85-15 provides that the impact on the ability to work is considerable where an individual can tolerate very little dust because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions. Additionally, Fowler contends that since the ALJ erred in relying on two of the three jobs provided by the vocational expert, the ALJ may have determined that the Grid rule for light work applied if he was only presented with the job, assembler, that Fowler could perform with these limitations.

In sum, Fowler argues that he should be found disabled under Grid Rule 202.02 because this is the closest comparable framework with the limitations in his RFC and alternatively, in light of the flawed testimony from the vocational expert, this matter should be remanded for the ALJ to determine which Grid Rule framework to apply. The court disagrees.

The court observes that "medium work" is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). SSR 83-10 further defines medium work and the court acknowledges that this Ruling indicates that "[t]he considerable lifting required for the *full range* of medium work



usually requires frequent bending-stooping." SSR 83-10, 1983 WL 31251, at *6 (emphasis added); see also SSR 83-14, 1983 WL 31254, at *5 ("Consequently, to perform the *full range* of medium work as defined, a person must be able to do both frequent stooping and frequent crouching—bending both the back and the legs—in order to move objects from one level to another or to move the objects near foot level. While individual occupations classified as medium work vary in exertional demands from just above the light work requirements to the full range of medium work, any limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found capable of medium work.") (emphasis added). However, the ALJ did not find that Fowler could perform a full range of medium work in light of his nonexertional limitations.

> Further, Rule 200.00(e)(2) provides that
>
> where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). In this case, the ALJ used a vocational expert to determine whether jobs existed in significant numbers in the national economy that a hypothetical individual with Fowler's exertional and nonexertional limitations could perform. See Grant, 699 F.2d at 192; see also Walker, 889 F.2d at 49; 20 C.F.R. §§ 404.1569a(d); 416.969e(d) ("If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and



demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision."). Even eliminating the jobs of packer and machine tender, the vocational expert testified and the ALJ found that Fowler could perform the job of assembler, a job which exists in significant numbers. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying Step Five under the sequential evaluation analysis).

Further, the court finds unpersuasive Fowler's argument that in light of his nonexertional impairments, the ALJ should have determined that he was limited to light work under the Grids which would result in a finding of "disabled." Such an argument has previously been rejected in this district. See Jolly v. Astrue, C/A No. 3:07-3828-PMD-JRM, 2009 WL 890641, at *8 (D.S.C. Mar. 29, 2009) (rejecting a similar argument that in light of the claimant's nonexertional impairments the ALJ should have determined that the claimant could only perform sedentary work rendering her disabled under the Grids and explaining that "the ALJ must determine the highest level at which a claimant can perform work, and the ALJ must then ascertain that there are jobs available at that level which a person of claimant's specific conditions and limitations could perform").

The court therefore finds that Fowler has not demonstrated that the Commissioner failed to meet her burden at Step Five.

**B.     Residual Functional Capacity**

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize



"all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC. See SSR 96-8p, 1996 WL 374184. The RFC assessment must be based on all of the relevant evidence in the record.[3] Id. The ALJ must address both the individual's exertional and nonexertional capacities. Id., at *5-6. Further, the assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusion. Id., at *7.

Fowler argues that the ALJ failed to properly explain how his severe impairments of low back pain, left shoulder pain, and bilateral interstitial fibrosis limited his ability to perform basic work activities. Fowler also argues that the ALJ failed to explain how an individual that has breathing tests indicating a lung age of 78 could be expected to perform medium work on a full-time basis. The court observes that Fowler has failed to show any additional limitations, other than speculation and assumption, that would stem from these impairments. While the evidence supporting the conclusion that Fowler can perform medium work appears to be limited to the opinions of the state agency medical consultants, no medical evidence indicates that additional limitations are warranted. See SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46

---

[3] This evidence includes: medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184, at *5.



(4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner).

The only evidence of record that may indicate additional physical limitations since the onset date is Fowler's own testimony and self-reports, which the ALJ found were not credible. Furthermore, the ALJ's decision reflects consideration of these impairments in formulating Fowler's RFC. For example, the ALJ observed that these impairments are capable of producing some pain and functional limitations; however, he also found that Fowler "has the capacity to use his upper and lower extremities and hands without significant limitations, and that he has the capacity to stand, walk, lift, carry, and move about without significant problems." (Tr. 17.) The ALJ discussed the medical evidence of record regarding Fowler's bilateral interstitial fibrosis finding that

> [t]he evidence substantiates that the claimant has bilateral interstitial fibrosis, which could cause breathing difficulties. However, the medical evidence essentially demonstrates the claimant was not in any significant distress, and that he had clear lungs without rales, rhonchi, or wheezing. Pulmonary function test[] results from October 2003 are incomplete, and pulmonary function tests in June 2009 and November 2009 demonstrated only mild ventilator restriction. In fact, results were higher that the October 2003 test. Chest x-ray showed no evidence of asbestosis.

(Tr. 16.) With regard to Fowler's shoulder and back pain the ALJ stated the following:

> The evidence reveals the claimant first sought treatment for complaints of left shoulder pain in October 2010 and for back pain in November 2010. The clinical findings revealed he had shoulder pain with rotation and lower back tenderness. However, x-rays showed only minimal degenerative changes with no evidence of stenosis, herniation, radiculopathy, or nerve root impingement. The clinical findings consistently show that the claimant was well nourished, well developed, and in no acute distress; that he was alert, oriented, pleasant, and cooperative; that he had full range of motion of the cervical spine all joints in all four extremities and was without tenderness to palpation of any joint, swelling, inflammation, or deformity. He had no sensory or motor deficits in any extremity or any muscle atrophy. He had normal grip strength bilaterally, normal fine and gross motor skills bilaterally, normal reflexes and pulses, negative straight leg raise bilaterally, and normal gait. The claimant testified his shoulder and back pain are intermittent and variable, and that he is still able to lift up to 30 pounds despite his complaints of pain. Accordingly, I find that the claimant's alleged physical limitations due [to] severe shortness of



>breath and back and left shoulder pain are not credible and not supported by the clinical or laboratory findings.

(Id.) (errors in original).  Therefore, the court cannot say that the ALJ's decision finding that Fowler is capable of performing medium work activity with certain additional limitations is unsupported by substantial evidence or controlled by an error of law.

**C.     Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  It appears that in this matter only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work."  Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.  "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence."  Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work."  Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id.  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

> In this case, the ALJ observed that at the hearing Fowler testified that
>
> he has shortness of breath with exertion, chest tightness, problems with equilibrium, intermittent back pain down to his legs that "comes and goes," and left shoulder pain sometimes.  He testified that he is limited to lifting 30-40 pounds because of back and shoulder pain, standing 15-20 minutes because of back pain, and walking only 150-200 feet due to shortness of breath.  He testified that he cannot bend, stoop, or crawl only when his back "goes out."  The claimant testified he began seeing a doctor for his back pain in January 2010.  The claimant testified he takes Flexeril and Mobic for his pain.

(Tr. 16.)  The ALJ found that Fowler's "allegations concerning impairments/disability and the inability to work are not substantiated by the total evidence of record and not credible." (Id.)  In reaching this conclusion, the ALJ found (1) that the evidence demonstrates that Fowler did not stop working due to his alleged impairments because he reported that he stopped working because the



"job ran out" and looked for other work afterward; (2) as quoted in full above, that his alleged limitations were not supported by the clinical or laboratory findings; and (3) that his allegations are not supported by his own reported daily activities, which included going out in public alone, shopping in stores, attending church every week, driving, handling finances, not needing reminders, having a stable relationship with his girlfriend, working on cars, and racing cars, as well as the ability to pay attention, follow instructions, and handle changes in routine. (Tr. 16-17.) The ALJ also generally stated that

> [c]onsideration has been given to both medical and non-medical evidence, including the use and effects of medications; precipitating and aggravating factors; duration and frequency of the symptoms; resultant functional restrictions; daily activities; treatment and other alternative measures, besides medications, for the relief of pain; the consistency between the level and frequency of treatment and the level of complaints; the extent to which prescribed treatment has been followed; the consistency of the claimant's allegations with prior statements made about the symptoms elsewhere in the record to other medical sources, to family, friends, agency personnel or other lay persons; and the consistency of the allegations with reports and observations by others concerning the claimant's activities, behavior and efforts to work.

(Tr. 17.)

Fowler challenges the reasons offered by the ALJ to discount his credibility, arguing that his credibility may not be disregarded solely because his allegations are not substantiated by the medical evidence; that his activities of daily living were not indicative of the ability to perform full-time work at a medium level; that the ALJ failed to consider his back pain medications; and that his work history and efforts to return to work favor his credibility.

Upon review of the records as a whole and the parties' briefs, the court finds that Fowler has failed to demonstrate that the ALJ's determination that Fowler was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion comfortably within the bounds of substantial evidence. See

Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision clearly reflects that he considered the relevant factors in weighing Fowler's credibility, one of which is Fowler's daily activities. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Although Fowler's subjective complaints "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, the ALJ properly considered the objective medical evidence and other objective evidence in evaluating Fowler's complaints and the extent to which it impairs his ability to work. See Craig, 76 F.3d at 595. Further, the court notes that in discussing Fowler's testimony, the ALJ specifically observed that Fowler testified that he takes Flexeril and Mobic for his pain. Therefore, the court finds that Fowler has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Fowler has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 23, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).